IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. BILLY JAMES MENEES and ASHLEY DAWN MARIE SCHARDEIN, *Defendants*. | Case No. 21-CR-151-TDD |

## UNITED STATES' RESPONSE TO DOC. NOS. 307 AND 308

**COMES NOW** the United States of America, by and through United States Attorney Christopher J. Wilson, and Assistant United States Attorney Nicole Paladino, and respectfully asserts that Defendants' arguments set forth in Doc. Nos. 307 and 308 are untimely and therefore make no difference in the outcome of this case. Even if the arguments were not untimely, however, the Defendants' convictions as to all counts should remain as they are, and this Court should proceed to sentencing with no analogous guidelines. The United States also respectfully requests that in addition to this Response, the Court incorporate by reference the arguments set forth by the United States in Doc. No. 309.

**I.   Dismissal of the Defendants' convictions for Child Abuse and retrial of the Defendants' convictions for Child Neglect is not appropriate because the decision in *Shell* does not constitute newly discovered evidence.**

A motion for new trial or acquittal must be filed no later than 14 days after the guilty verdict. Fed. R. Crim. P. 29(c)(1), 33(b). A defendant may seek a new trial after that deadline only on the basis of "newly discovered evidence," or a finding that the delay was the result of excusable neglect. Defendants' brief requesting dismissal was not filed until 20 months after the

1

jury rendered its unanimous verdicts.[1] Because Defendants' argument is not based on "new evidence" and the delay in filing is not the result of excusable neglect, this Court should find the dismissal argument untimely and unfounded.

"A motion for a new trial based on newly discovered evidence is not favorably regarded and should be granted only with great caution." *United States v. McCullough*, 457 F.3d 1150, 1167 (10th Cir. 2006) (quotations omitted). To prevail, a defendant must prove "(1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by [Defendants] own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal." *Id.* (quotations omitted). Here, the Appellate Court's decision in *United States v. Jacob Thomas Shell,* No. 23-5086 (July 18, 2024, NDOK, 21-CR-537-GKF) (unpublished) is not "evidence"—there are no facts in *Shell* that have any evidentiary value in this case. Instead, *if* it is even applicable, *Shell* presents a legal issue that Defendants can pursue on appeal, but the issue is waived at this point in these proceedings.

Furthermore, *Shell* does not present any new argument that Defendants could not have pursued earlier. Nothing prevented Defendants from arguing that physical child abuse must be charged under the federal assault statute at 18 U.S.C. § 113(a), rather than pursuant to assimilated state law.[2] The opinion in *Shell* is based on an application of the Tenth Circuit's published decision in *United States v. Harris*, 10 F.4th 1005 (10th Cir. 2021) (declining to assimilate a state assault statute in light of 18 U.S.C. § 113(a)). *See Shell*, 2024 WL 34455033, at *4. Even before *Shell* was decided, Defendants could have cited *Harris* to argue against the assimilation of state

---

[1] The Government notes that although the Defendants' briefs are not filed as motions to dismiss, the relief requested by the Defendants is dismissal, so the Government responds as if the Defendants have moved to dismiss.
[2] See Doc. No. 309, footnote 1.

2

law on physical child abuse. Each failed to do so.

As the Government pointed out in its "Brief Regarding the Tenth Circuit's Order in United States v. Shell, (Doc. No. 309), this exact issue was recently decided in the Northern District of Oklahoma after a defendant sought a post-conviction dismissal of her child abuse case based on the unpublished order in *Shell*. United States District Judge Sara F. Hill held among other things that the Tenth Circuit's decision in *Shell* "[is] not binding on [this] Court." *United States v. Smith* 2024 WL 3757160 (August 12, 2024, NDOK, 21-CR-553-SEH-2)(slip opinion)(see Doc. No. 309, Exhibit 2). The Court further held:

> While the timing of the Tenth Circuit's decision in *Shell* was not within Defendant's control, the underlying arguments were available to her when she filed her first round of motions. The Court also agrees that the decision in *Shell* is not "newly discovered evidence" that would traditionally justify a new trial or acquittal. All of these factors lead the Court to conclude that the Motion should be denied.

*Id.*

Even as it is clear to the Government that *Shell* is not at issue regarding the child abuse counts in this case, the Defendants do not stop there. Instead, Defendants go one step further and request a retrial as to the child neglect counts. However, even if *Shell* was new evidence, which it is not, it would not disturb unanimous verdicts as to child neglect because *Shell* does not address child neglect. There is no factual or legal basis to revisit those counts.

Further, Defendants assert that the Court should have given a special verdict form "list[ing] the acts upon which the Government chose to rely on for conviction" as to both child abuse and child neglect. (Doc. Nos. 307 and 308 P. 4). Defendants make that assertion despite the fact that it is not a new argument contemplated by a motion for new trial/acquittal. In fact, Defendants previously raised these exact arguments during the jury trial, both in open court and in chambers, and the arguments were fully litigated and ruled against by this Court. The Government does not

believe it is necessary to again respond to arguments that were already ruled on, because those are issues for appeal. The Government does, however, assert that the Tenth Circuit has decided this issue in multiple contexts. In *United States v. Powell*, the Court held:

> "…the jury need not agree unanimously on the *means* by which an element is proven. *Id.* ("[A] disagreement about means ... would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element ..."). Consequently, the Court held, "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.; see also id.* at 828, 119 S.Ct. 1707 (Kennedy, J., dissenting) ("We begin on common ground, for ... it is settled that jurors need not agree on all of the means the accused used to commit an offense."); *Schad v. Arizona,* 501 U.S. 624, 649, 111 S.Ct. 2491, 115 L.Ed.2d 555 (Scalia, J., concurring) ("[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.").

226 F.3d 1181, 1196 (10th Cir. 2000).

II. **Even if this Court found that the Defendants' arguments regarding *Shell* are timely, the child abuse convictions should not be dismissed because this case is distinguishable from *Shell*.**

The relevant inquiry for this Court to consider is whether a state offense fills a gap in federal law or is merely duplicative to an already existing federal statute. Section 843.5(A) covers a wide range of conduct which § 113 leaves unaddressed. *See, e.g., United States v. Rose*, 21-CR-294, 2022 WL 1087599, *2 (E.D. Okla. 2022) (unpublished) ("Title 21 O.S. § 843.5(A) potentially covers a broader range of conduct" than the federal assault statute). For example, § 843.5(A) criminalizes the threatened harm to a child's health; the willful failure to protect a child from harm to the child's welfare; and the malicious threatened harm to a child's safety. Section 113 covers none of these crimes. Section 843.5(A) also criminalizes the willful injury of a child, which is not the same as an assault because a defendant can willfully injure a child without inflicting, or attempting to inflict, an injury.

Defendants would have this Court disregard § 843.5(A) in its entirety because they argue that it could theoretically capture conduct which may be punishable under § 113. However, this would greatly reduce the scope and reach of the ACA, an outcome *Lewis* rejected. Defendants' interpretation "would leave federal criminal enclave law subject to gaps of the very kind the Act was designed to fill. The Act would be unable to assimilate even a highly specific state law aimed directly at a serious, narrowly defined evil, if the language of any federal statute, however broad and however clearly aimed at a different kind of harm, were to cover the defendant's act." *Lewis*, 523 U.S. at 161. To wholesale disregard the statute because a small subset of acts could fall under § 113 would result in the tail wagging the dog.

**PRONG ONE OF *LEWIS*:**

Thus, to answer *Lewis'* first step, like the *Shell* Court did, this Court should look to the offense contained in the case at bar's charging document:

<u>**COUNT ONE**</u>

**CHILD ABUSE IN INDIAN COUNTRY**
**[18 U.S.C. §§ 1151, 1152, 2 & 21 Okla. Stat. 843.5(A)]**

Between on or about January 1, 2019 and May 9, 2020, within the Eastern District of Oklahoma, in Indian country, the defendants, **BILLY JAMES MENEES,** a non-Indian, and **ASHLEY DAWN MARIE SCHARDEIN**, a non-Indian, did *willfully and maliciously cause and threaten harm, fail to protect from harm and threaten harm, torture and injure K.M.,* an Indian, all while defendants were responsible for the health, safety and welfare of K.M., a child under the age of eighteen, in violation of Title 18, United States Code, Sections 1151 and 1152, 2 and Title 21, Oklahoma Statutes, Section 843.5(A).

Because the charged conduct herein, falling under § 843.5(A), is not punishable by any enactment of Congress, the answer to *Lewis'* first question is no, and the state law is properly assimilated.

Defendants were charged with and convicted of harming Victim. This is significant

5

because under Oklahoma law, "harm" encompasses both physical harm as well as emotional harm: "'Harm or threatened harm to the health or safety of a child' means any real or threatened physical, mental, or emotional injury or damage to the body or mind that is not accidental including, but not limited to, sexual abuse, sexual exploitation, neglect, or dependency." 10A O.S. § 1-1-105(34). Additionally, Defendants tortured Victim. She was willfully and maliciously starved, shaved, tied up, beaten, confined to a room for substantial periods, forced into cold showers, made to stand under a fan, forced to urinate and defecate on herself, hosed off while outside in the cold air, forced to hold signs embarrassing her in public, forced to stand with her hands up for unreasonable periods of time, and more. None of this egregious behavior is covered by any federal assault statute. This is especially true because the Defendants in the case at bar were accused with committing both acts of commission and acts of omission.

**PRONG TWO OF *LEWIS*:**

Assuming arguendo this Court reaches the second prong of the *Lewis* test, § 843.5(A) is still properly assimilated. *Lewis* directs courts to determine whether the applicable federal statute precludes assimilation because: (1) "its application would interfere with the achievement of a federal policy;" (2) "the state law would effectively rewrite an offense definition that Congress carefully considered;" or (3) "federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Lewis*, 523 U.S. at 164. Because the answer to each of these questions is no, assimilation is appropriate.

    **1.** ***Section 843.5(A) Does Not Interfere with the Achievement of a Federal Policy***

"There is no federal crime of non-sexual child abuse nor any federal child neglect or child abandonment crime . . . ." *Ibarra v. Holder*, 736 F.3d 903, 912 (10th Cir. 2013). Moreover, "federal law does not define or directly punish 'felony child abuse or neglect' . . . ." *United States*

*v. Clark*, 981 F.3d 1154, 1163 (10th Cir. 2020) (quoting 18 U.S.C. § 1153). "Although federal criminal law includes a misdemeanor for assault on a minor, no federal law defines and punishes felony child abuse." *United States v. Other Medicine*, 596 F.3d 677, 679 (9th Cir. 2010).

§ 843.5(A) does not interfere with the achievement of a federal policy. There is no federal policy which addresses child abuse, or to the extent there is a federal policy, any such policy would aim to decrease or eliminate instances of child abuse. Oklahoma's state statute would further such a policy, as it criminalizes and deters child abuse. Consequently, § 843.5(A) does not interfere with the achievement of a federal policy.

### 2. *Section 843.5(A) Does Not Effectively Rewrite an Offense Definition Congress Carefully Considered*

The next inquiry examines whether § 843.5(A) rewrites or expands the federal assault statute, § 113. "The primary question (we repeat) is one of legislative intent: Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" *Lewis*, 523 U.S. at 166.

As noted above, child abuse statutes fill obvious gaps in federal law because there is no federal law addressing child abuse. While § 113 addresses a wide range of assaultive behavior, it covers only acts of commission, not acts of omission, and requires either making physical contact with an individual or threatening such contact. Under Oklahoma law, child abuse is not limited to conduct which causes injury or threatens injury. There is a wide range of conduct, outside of an assault, that constitutes child abuse which should be punished and that is not punishable by § 113.

Applicable to this inquiry, is the treatment of federal prosecutions for child abuse under the Major Crimes Act, 18 U.S.C. § 1153.[3] Section 1153 grants federal criminal jurisdiction to a

---

[3] "Both the ACA and IMCA are gap-filling statutes. Because of the similarities between the two statutes, courts have found cases interpreting the assimilating provisions of the ACA helpful in cases involving the same provisions of the IMCA." *United States v. Wood*, 386 F.3d 961, 963, n.2 (10th Cir. 2004) (internal quotations omitted).

variety of offenses committed by an Indian against an Indian, including the offense of "felony child abuse or neglect." 18 U.S.C. § 1153 (2013). Congress added "felony child abuse or neglect" to the list of enumerated offenses "to close the gap that exists in addressing the full range of crimes that may be inflicted on children." S. Rep. 109-255, at 5 (2006). In explaining their reasoning for proposing the amendment, the Senate committee explained "the federal government does not have jurisdiction to investigate or prosecute acts of child physical abuse or neglect unless they rise to the level of serious bodily injury or death," and for that reason "[t]he Committee is concerned that a whole category of crimes against children may be going unaddressed." S. Rep. 109-255, at 5 (2006). The committee thus explained that the amendment was intended to close the gap in prosecuting crimes against Indian children on reservations. *Id*.

However, § 1153 does not define "felony child abuse or neglect." The "government may use state law only when federal law does not define and punish the Major Crimes Act offense." *Other Medicine*, 596 F.3d at 681; see also § 1153(b) ("Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law . . . shall be defined and punished in accordance with the laws of the State in which such offense was committed . . . ."). The Ninth Circuit found the government could properly incorporate Montana's state law regarding child abuse or neglect when proceeding under the Major Crimes Act because felony child abuse or neglect was distinct from any of the conduct listed in § 113. *Id*. at 680-81. *Other Medicine* thus supports the conclusion that § 113 does not define or punish felony child abuse, otherwise incorporation of the Montana statute would have been prohibited.

After *Other Medicine*, Congress amended § 1153 to include another offense, "a felony assault under section 113." See Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 906(b), 127 Stat. 54, 125 (2013). However, the amendments retained "felony child

8

abuse" as a separate offense. If child abuse and assaultive conduct under § 113 covered the same conduct, Congress would have deleted reference to "felony child abuse" from the Major Crimes Act. The delineation of both crimes in § 1153, speaks to Congress's intent that child abuse is a separate and distinct crime from a § 113 assault. *See also United States v. Scott*, 83 F.4th 796, 800 (9th Cir. 2023) ("Thus, 'felony assault under section 113' and 'felony child abuse' remain discrete crimes chargeable under the Major Crimes Act.").

The Senate committee's discussions of the amendment, as well as Congress's ultimate decision to amend the Major Crimes Act to add "child abuse" to the list that already included federal assaults, demonstrate Congress's intent for state law to be applied in the context of federal child abuse cases. If Congress had carefully considered, and written, § 113 to address child abuse then why would Congress include both child abuse and § 113 as separate offenses under the Major Crimes Act? Nor does it matter that this language is from the Major Crimes Act, which addresses jurisdiction over Indian offenders. Why would Congress intend for an Indian child to be offered more comprehensive protection from child abuse if their abuser is Indian than if their abuser is non-Indian?

Defendants argue assimilation of § 843.5(A) would effectively rewrite an offense definition that Congress carefully considered. To be clear, the federal assault statute defines eight different assaultive acts. 18 U.S.C. § 113(a)(1)-(8). But despite the length of the assault statute, it does not provide any definition of child abuse. Moreover, when § 113 contemplates crimes against children, it does not create a separate offense, but only provides for aggravated penalties. Section 113 fails to capture many forms of child abuse: failure to seek appropriate medical treatment, verbal abuse, withholding adequate food, exposure to extreme weather conditions as a

9

form of punishment, driving while intoxicated with a child present, or providing methamphetamine to a child. Section 113 simply does not define or address the distinct crime of child abuse.

### 3. Section 113 Does Not Reveal an Intent to Occupy So Much of a Field as Would Exclude Use of Section 843.5(A)

Finally, there is no indication Congress intended § 113 to occupy the field of child abuse to the exclusion of all other state statutes. *Lewis* directs this inquiry to look at whether "Congress has covered the field with uniform federal legislation." *Lewis*, 523 U.S. at 164-65 (internal quotations omitted). It is clear Congress has not covered the field with uniform federal legislation to address child abuse. For example, when writing laws such as the Major Crimes Act to address child abuse, Congress has indicated an intent for state law to serve as the gap filler. Even if § 113 is interpreted as a child abuse statute, it certainly is not uniform federal legislation given the scope of § 1153. This again presents the question of why Congress would intend for a non-Native child abuser to be treated differently than a Native child abuser?

*Shell* addressed this inquiry by "defer[ring] to the *Harris* holding" but recognized "there are some distinctions between *Harris* and this case." 2024 WL 3455033 at *4. These distinctions deserve great weight, and again should be determined by looking at the statutes themselves. Section 843.5(A) covers a wide swath of conduct, including acts of omission, that do not fall within the ambit of § 113. If assimilation was prohibited, significant gaps would exist as the conduct could simply not be charged under § 113. Clearly, Congress intends for cases of child abuse to be prosecuted at the federal level. *See, e.g.*, 18 U.S.C. § 1153. And it views § 113 as separate and distinct from felony child abuse. *Id.* Thus, it cannot be said that Congress intended § 113 to occupy so much of the field of child abuse that it excludes assimilation of state law.

Section 113 is not a child abuse statute. It fails to capture a wide range of abusive conduct. And in this specific case, Defendants convictions of willful and malicious harm, failure to protect

from harm, torture, etc… do not fall within the orbit of § 113. While Defendants argue there is simply no gap to fill, they overlook the charges they were each unanimously convicted of and the conduct that offense encompasses. Congress has never evidenced an intent for § 113 to occupy the field of child abuse to the exclusion of § 843.5(A). Instead, § 843.5(A) acts as a necessary gap filler where Congress has specifically declined to intervene. *Shell* is not a finding that state child abuse statutes can ***never*** be assimilated. *Shell* is wholly distinguishable from this case and therefore assimilation is appropriate.

### III. Defendants' were convicted of child abuse counts that were correctly charged and *Shell* is not applicable to any analysis of the sentencing guidelines.

The United States has substantial argument regarding whether there is an analogous guideline for the crime of child abuse. Some of that argument has previously been asserted in the United States' Brief in Doc. No. 309. The United States will thoroughly argue this issue during the sentencing phase of these proceedings. However, because *Shell* is not applicable to an analysis of the guidelines and because this case is not currently set for sentencing, the United States believes a guidelines argument is not yet proper herein.

### CONCLUSION

Defendants' arguments set forth in Doc. Nos. 307 and 308 are untimely and should therefore be given no consideration by this Court. Even if this Court considers the arguments, however, the convictions as to all counts should not be disturbed and the case should proceed to sentencing because *Shell* is distinguishable and has no impact on this case. For all the foregoing reasons, the Government respectfully requests that Defendants arguments be denied and that the case be scheduled for sentencing hearings.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/    Nicole Paladino
NICOLE PALADINO, AR Bar # 2017113
Assistant United States Attorney
520 Denison Ave.
Muskogee, OK 74401
(918) 684-5100
Nicole.Paladino@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Cody L. Cofer and Kara L. Carreras, Attorneys for Defendant Menees
Ronald Gainor and Lynn A. Pierce, Attorneys for Defendant Schardein

s/    Nicole Paladino
NICOLE PALADINO
Assistant United States Attorney