IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-21-151-TDD |
| | ) |
| BILLY JAMES MENEES and | ) |
| ASHLEY DAWN MARIE SCHARDEIN, | ) |
| | ) |
| Defendants. | ) |

**<u>ORDER</u>**

Before the Court are the parties' filings [Doc. Nos. 306, 307, 308, 309], which were submitted in response to the Court's order directing the parties to file briefs addressing what impact, if any, the Tenth Circuit's recent order and judgment in *United States v. Shell* has on this case. The government also sought, and was granted, leave to file a response [Doc. No. 312] to Defendants' filings. The issue has been fully briefed, and, for the reasons that follow, the Court will proceed with sentencing Defendants on their Child Abuse and Child Neglect convictions.

**BACKGROUND**

The government charged Defendants Billy James Menees and Ashley Dawn Marie Schardein with: (1) one count of Child Abuse in Indian Country in violation of 18 U.S.C. §§ 1151, 1152, 2 and Okla. Stat. tit. 21, § 843.5(A); and (2) one count of Child Neglect in Indian Country in violation of 18 U.S.C. §§ 1151, 1152, 2 and Okla. Stat. tit. 21, § 843.5(C). Because Defendants are non-Indians, the victim is Indian, and the offenses occurred in Indian territory, the government used the Assimilative Crimes Act ("ACA") to charge

Defendants in federal court for violating Oklahoma state law. The case proceeded to trial, and, on February 23, 2023, the jury found Defendants guilty on both counts.

Approximately one week before the Court was to sentence Defendants, the Tenth Circuit issued an unpublished order and judgment in *United States v. Shell*, No. 23-5086, 2024 WL 3455033 (10th Cir. July 18, 2024). In *Shell*, the defendant was charged under the ACA with violating Okla. Stat. tit. 21, § 843.5(A)—the same Oklahoma statute underlying Defendants' Child Abuse convictions in this case. *Id.* at *1. The defendant in *Shell* moved pre-trial to dismiss the indictment for failure to state an offense, arguing that § 843.5(A) could not be assimilated under the ACA. *Id.* The district court denied the motion, and the defendant entered a conditional guilty plea, was sentenced, and timely appealed the district court's ruling on his motion to dismiss. *Id.* The Tenth Circuit reversed, holding that the defendant's motion to dismiss should have been granted because "the assimilation of the assaultive provisions of Oklahoma's child abuse statute via the ACA is inappropriate." *Id.* at *5.

On July 19, 2024, the parties here filed a Joint Motion for Continuance of Sentencing Hearings and Request for Further Briefing [Doc. No. 302]. The parties contended that *Shell* "has the potential to dramatically impact the Defendants' cases before this Court for sentencing." *Id.* at 2. Therefore, the parties requested a continuance of Defendants' sentencing hearings so they could "fully research the implications of the Tenth Circuit's Order." *Id.* The Court granted the Joint Motion and set a briefing schedule. *See* 7/19/2024 Order [Doc. No. 303].

Pursuant to the Court's briefing schedule, the parties timely filed their briefs [Doc. Nos. 307 (Ms. Schardein), 308 (Mr. Menees), 309 (the government)].[1] The Court also granted the government's request to file a response [Doc. No. 312] to Defendants' respective briefs. *See* 10/16/2024 Order [Doc. No. 311].

## DISCUSSION

**I.  Under the present circumstances, the Court appears to lack authority to dismiss the Child Abuse convictions.**

As an initial matter, the Court addresses Defendants' requests that their Child Abuse convictions be "dismissed." *See* Schardein Brief at 3; Menees Brief at 4.[2] Although Defendants maintain that *Shell* warrants such a disposition, they fail to provide any argument or authority regarding the procedural mechanism permitting the Court to do so. The Tenth Circuit has instructed that a district court may not *sua sponte* dismiss an indictment. *See United States v. Walker*, 576 F. App'x 725, 726 (10th Cir. 2014) ("But here, the district court exercised powers that it didn't have, invading the province of the executive branch by dismissing the indictment based on disagreement with the charging decision. This action constituted an abuse of discretion, requiring us to reverse the dismissal and reinstate the indictment."). That logic would seem to apply with even greater force to counts included in a jury's guilty verdict.

---

[1] Although not authorized by the Court's prior order, Ms. Schardein also filed a motion [Doc. No. 306] in which she contends that her "child abuse conviction should be reversed because she was improperly charged under the assimilation of the assaultive provisions of Oklahoma's child abuse statute via the Assimilative Crimes Act." Because Ms. Schardein's filing was not authorized by the Court, it is **STRICKEN**.

[2] By and large, Defendants' briefs include the same arguments and requests for relief.

This situation is different, however, as Defendants have each explicitly asked the Court to dismiss their Child Abuse convictions. But, for several reasons, Defendants' requests will be denied. First, a motion alleging "a defect in the indictment or information" must be filed before trial "if the basis for the motion is then reasonably available . . . ." Fed. R. Crim. P. 12(b)(3)(B). As discussed in detail below, the arguments raised in *Shell* were available to Defendants before trial; indeed, the defendant in *Shell* properly raised them in a pre-trial motion to dismiss before the district court. Defendants here failed to request dismissal until the sentencing stage of this case, thus making their request untimely. *See id.*; *see also* LCrR 12.1(E) (providing that, absent a court order, all motions "shall be filed with the Court Clerk within fourteen (14) days after arraignment").

Second, and perhaps more importantly, Defendants provide no authority supporting the argument that the Court may dismiss a conviction based on an intervening Tenth Circuit decision, much less an unpublished, non-binding order and judgment. Even assuming the Court agreed with Defendants' position that *Shell* undermines their Child Abuse convictions (as explained below, the Court does not), it remains unclear what source of law provides the Court with authority to dismiss those convictions. To the extent Defendants would have the Court invoke its inherent authority, several circuit courts have rejected that argument under similar circumstances. *See, e.g.*, *United States v. Wright*, 913 F.3d 364, 375 (3d Cir. 2019) (holding that the district court, after two trials ended with the jury unable to reach a verdict, abused its discretion in dismissing an indictment pursuant to its inherent authority); *see also United States v. Tucker*, 8 F.3d 673, 674-75 (9th Cir. 1993) (rejecting defendant's argument that the court, pursuant to its supervisory authority, should reverse

his conviction and dismiss the indictment, emphasizing that "a federal court may not exercise its supervisory authority to reverse a conviction or dismiss an indictment absent prejudice to the defendant" typically associated with a due-process violation).[3]

In sum, Defendants provide no authority—and the Court is aware of none—standing for the proposition that the Court may, under these circumstances, overturn the jury's verdicts in response to an untimely motion to dismiss the underlying charge. The Court will, however, construe Defendants' briefs as seeking relief under Federal Rule of Criminal Procedure 29 and 33, and analyze the requests accordingly.

## II. The Court will construe Defendants' briefs as motions filed pursuant to Rule 29 and 33.

Because it appears the Court lacks authority to dismiss—either upon Defendants' motion or *sua sponte*—Defendants' Child Abuse convictions, it will construe Defendants' briefs as seeking a judgment of acquittal under Rule 29 or a new trial under Rule 33. Although Defendants only explicitly request a new trial on their Child Neglect convictions, the Court's analysis applies equally to each conviction.

A motion for a judgment of acquittal filed after a jury verdict must be filed "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). A motion for new trial, if grounded on newly discovered evidence, must be filed "within 3 years after the verdict or finding of guilty" or, if grounded on any other

---

[3] As Judge Hill noted in *United States v. Smith*, nothing herein is intended to alter Defendants' appellate and post-conviction rights. No. 21-CR-553-SHE-2, 2024 WL 3757160, at *3 (N.D. Okla. Aug. 12, 2024).

reason, must be filed "within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1), (2).

Here, the jury returned its verdict as to each Defendant on February 23, 2023, *see* Jury Verdicts [Doc. Nos. 256, 257], making Defendants' motions due March 9, 2023. But Defendants did not file the instant briefs until October 8, 2024—approximately 19 months later. Therefore, to the extent their briefs are construed as such, Defendants' requests for a judgment of acquittal are untimely. *See* Fed. R. Crim. P. 29(c).

Defendants' requests for a new trial are likewise untimely, unless the Court is convinced the requests rely on newly discovered evidence. But it is clear that the reason underlying Defendants' requests is the *Shell* order, which does not constitute newly discovered evidence. *See Smith*, 2024 WL 3757160, at *3 ("The Court also agrees that the decision in *Shell* is not 'newly discovered evidence' that would traditionally justify a new trial or acquittal."); *see also United States v. Danks*, 357 F. Supp. 193, 194 (D. Haw. 1973) ("Since defendant has cited no authority for the proposition that the decision of the Ninth Circuit in *Steele* constitutes 'newly discovered evidence,' and I am not aware of any such authority, a Rule 33 motion is not appropriate."); *United States v. King*, 735 F.3d 1098, 1108-09 (9th Cir. 2013) ("[A] change in the law does not constitute newly discovered evidence for purposes of Rule 33."); *United States v. Granza*, 427 F.2d 184, 186 (5th Cir. 1970) ("Appellants' recent 'discovery' that the criminal statute may have constitutional defects does not qualify as 'newly discovered evidence.'").

Notwithstanding the untimeliness of Defendants' requests, the Court "on its own may extend the time, or for good cause may do so on a party's motion made . . . after the

time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). Relevant factors for the Court to consider in determining whether excusable neglect exists include the following: "(1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Bruce v. City of Colo. Springs*, No. 22-1413, 2024 WL 1109065, at *2 (10th Cir. Mar. 14, 2024) (citing *Bishop v. Corsentino*, 371 F.3d 1203, 1206 (10th Cir. 2004)) (discussing excusable neglect in determining whether to extend the deadline to file a notice of appeal).

Here, three of the four factors cut against Defendants. First, the government would be prejudiced—although perhaps not greatly—by the filing of a motion for judgment of acquittal or motion for new trial. At the very least, the government would be required to dedicate valuable time and resources to responding to motions involving substantive, unresolved legal issues. Considered alongside the length of delay, as well as the complex nature of this case as a whole, the prejudice is greater than, say, responding to a motion filed three weeks after the jury's verdict.

Second, although the Court continued the sentencing hearings in this case pending resolution of the issues discussed herein (and thus it could be argued that the impact on judicial proceedings would be minimal), the length of Defendants' delay is significant. Based on the date of the jury's verdicts, Defendants' deadline to move for a judgment of acquittal or for new trial not based on newly discovered evidence was March 9, 2023. But

Defendants did not file the instant briefs until October 8, 2024. The length of delay—approximately 19 months—weighs heavily against Defendants.

Third, the reason for the delay was within the reasonable control of Defendants. Of course, the timing of the *Shell* order was not within Defendants' control. But the arguments advanced by the defendant in *Shell* were available to Defendants both before trial and during the 14-day period after the jury's verdicts. Indeed, on May 13, 2022, the defendant in *Shell* filed a motion to dismiss, arguing that Oklahoma's child abuse statute could not be assimilated under the ACA. *See United States v. Shell*, No. 21-CR-537-GKF, Mot. to Dismiss [Doc. No. 25] (N.D. Okla. May 13, 2022). By that time, there had already been two motions to dismiss filed in this case, neither of which raised ACA-based arguments. *See* First and Second Mots. to Dismiss [Doc. Nos. 53, 111]. And after the defendant in *Shell* filed his motion to dismiss, a third motion to dismiss was filed in this case, but again no ACA-based arguments were raised. *See* Third Mot. to Dismiss [Doc. No. 133].[4] Like the defendant in *Smith*, the arguments raised in *Shell* were available to Defendants well before their respective deadlines under Rule 29 and 33. *See Smith*, 2024 WL 3757160, at *3 ("While the timing of the Tenth Circuit's decision in *Shell* was not within Defendant's control, the underlying arguments were available to her when she filed her first round of motions.").

Fourth, although the Court has no reason to believe Defendants have acted in bad faith, this factor does little to impact the overall excusable-neglect analysis.

---

[4] Although she did not join in the first motion to dismiss, Ms. Schardein joined in the second and third motions. *See* 4/4/2022 Order [Doc. No. 120]; 7/15/2022 Order [Doc. No. 138].

On balance, the above four factors weigh against a finding of excusable neglect. Therefore, construed as motions under Rule 29 and 33, Defendants' requests for a judgment of acquittal or for a new trial are denied as untimely.

### III. The Court has serious doubt that *Shell* fully undermines Defendants' convictions in this case.

For several reasons, the Court has serious doubt that *Shell* fully undermines Defendants' Child Abuse convictions in this case. First, as the government notes, the *Shell* order and judgment is persuasive, non-binding authority. *See Shell*, 2024 WL 3455033, at *1 (unnumbered footnote) (noting that the order is "not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel"). The Court acknowledges the persuasive value of *Shell*, but it does not bind the Court to any specific analysis or outcome in this case.

Second, *Shell* resulted from an entirely different procedural background. There, the defendant timely filed a pre-trial motion to dismiss, the parties fully briefed the issue, and the district court held a hearing. *Id.* at *1. After the district court denied the motion, the defendant entered a conditional guilty plea and was sentenced. *Id.* The defendant then timely appealed, and the parties fully briefed the issue before the Tenth Circuit. Here, on the other hand, Defendants never raised an ACA-based argument in their pre-trial motions to dismiss. Nor did Defendants raise an ACA-based argument in a timely post-trial motion. Instead, Defendants proceeded to trial, were convicted on both counts, and only now ask the Court to, in effect, overturn the jury's verdicts. This is simply not a situation—like

9

*Shell*—where the Court was presented with timely arguments and could, in turn, render a decision rooted in the Federal Rules of Criminal Procedure or applicable caselaw.

Third, and more substantively, the charged conduct underlying Defendants' Child Abuse convictions in this case is markedly different than the charged conduct in *Shell*. The defendant in *Shell* was charged under § 843.5(A) based on a single, isolated incident of "assaulting H.S., a three-month-old infant . . . with his hands by violently and forcibly throwing and shaking H.S.'s body." *See Shell*, No. 21-CR-537-GKF, Indictment [Doc. No. 2] (N.D. Okla. Dec. 7, 2021); *see also Shell*, 2024 WL 3455033, at *1 ("Mr. Shell violently assaulted and threw his three-month-old son, H.S., to stop him crying." (internal footnote omitted)).

Here, the government charged Defendants under § 843.5(A) based on a months-long course of abusive conduct, including "willfully and maliciously caus[ing] and threaten[ing] harm, fail[ing] to protect from harm and threaten[ed] harm, tortur[ing] and injur[ing]" the victim. Superseding Indictment [Doc. No. 98] at 1.[5] When viewed in isolation, there was evidence introduced at trial showing Defendants committed single, isolated acts that could be described as assaultive in nature. But this case—unlike *Shell* or *United States v. Harris*, 10 F.4th 1005 (10th Cir. 2021)—involved a protracted course of conduct spanning months and involving myriad forms of abuse. The government here likely did not charge Defendants based on a single, isolated incident of assaultive conduct—*i.e.*, under the federal assault statute—for a rather straightforward reason:

---

[5] Indeed, the Superseding Indictment alleges that Defendants' abusive conduct occurred over approximately 16 months—from January 2019 to May 9, 2020.

10

assaultive conduct accounted for a mere fraction of the abuse Defendants inflicted on the victim.[6] Equating Defendants' months-long conduct in this case with a single instance of pointing a gun at someone during an argument, *see Harris*, 10 F.4th at 1009, or even a single instance of assaulting an infant, *see Shell*, 2024 WL 3455033, at *1, would, in the Court's view, lead to troubling and perhaps unjust results.

At bottom, the abuse in this case was substantially different in time, content, and duration from the isolated, assaultive conduct in *Shell*. As both the defendant and court acknowledged in *Shell*, § 843.5(A) includes conduct that is not criminalized by the federal assault statute, 18 U.S.C. § 113. *See Shell*, 2024 WL 3455033, at *3 n.5 ("As Mr. Shell admits, there is no federal law covering abusive acts of omission, like neglectful abuse, emotional abuse, or medical abuse. He thus concedes there is some conduct proscribed by Oklahoma's statute that is not criminalized by federal law, and he suggests those provisions could be assimilated under the ACA.").[7] In the Court's view, the nature of the abusive conduct in this case substantially qualifies as that which is criminalized by § 843.5(A), but is not criminalized by § 113.[8]

---

[6] As the government notes, the victim was "starved, shaved, tied up, beaten, confined to a room for substantial periods, forced into cold showers, made to stand under a fan, forced to urinate and defecate on herself, hosed off while outside in the cold air, forced to hold signs embarrassing her in public, forced to stand with her hands up for unreasonable periods of time, and more." Gov't Resp. [Doc. No. 312] at 6.

[7] This point has also seemingly been conceded by at least one other defendant charged under the ACA for violating § 843.5(A). *See* Opening Brief for Appellant at 20, *United States v. Bullard*, No. 24-7001, 2024 WL 3634404, at *14 (10th Cir. July 24, 2024) (arguing that the "assaultive conduct-striking B.W. and injuring him-is punishable under various subsections of the federal assault statute," but acknowledging that "Congress has not covered every form of child abuse").

[8] Moreover, although the *Shell* court ultimately left open the question of whether § 843.5(A) is divisible, it seemed to suggest that it might be, noting that the issue of divisibility "would seem

## CONCLUSION

As more fully set forth herein, to the extent Defendants ask the Court to dismiss their Child Abuse convictions, those requests are **DENIED**. To the extent Defendants move for a judgment of acquittal under Federal Rule of Criminal Procedure 29, or for a new trial under Federal Rule of Criminal Procedure 33, those requests are untimely and **DENIED**.

Further, the Court is unconvinced that the Tenth Circuit's unpublished order and judgment in *United States v. Shell* fully undermines Defendants' convictions in this case, or otherwise impacts or impedes considerations relevant for sentencing. The Court will, therefore, proceed with sentencing Defendants on both the Child Abuse and Child Neglect convictions and will set sentencing hearings by separate order.

**IT IS SO ORDERED** this 11th day of December, 2024.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

---

relevant because Oklahoma's child abuse statute, then as now, proscribed both abusive acts of *commission* and abusive acts of *omission*." 2024 WL 3455033, at *3 n.5 (observing that § 843.5(A) defines "'child abuse' as 'injuring, torturing or maiming a child' as well as the 'failure to protect from harm or threatened harm to the health, safety or welfare of a child'"). The issue of divisibility may, therefore, further support the conclusion that Defendants were properly charged in this case.